IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | | |
|---|---|---|
| Erica G. Smalls, | ) | C/A No. 3:19-1741-PJG |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| Richland County Recreation Commission, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

The plaintiff, Erica G. Smalls, filed this discrimination case against her former employer, the Richland County Recreation Commission ("Recreation Commission"). Her Complaint asserts a first cause of action alleging race discrimination, a second cause of action alleging sex discrimination, and a third cause of action based on a state law claim for wrongful termination in violation of public policy. As to her discrimination claims, Smalls relies on Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e, et seq.; the Equal Employment Opportunity Act; 42 U.S.C. § 1981;[1] and the South Carolina Human Affairs Law. This matter is before the court pursuant to Local Civil Rule 73.01(B) (D.S.C.) and 28 U.S.C. § 636(c), with the consent of the parties, on the defendant's motion for summary judgment. (ECF No. 22.) The motion has been briefed and is ready for resolution. (See ECF Nos. 22-1, 24, & 27.) Having reviewed the parties' submissions and the applicable law, the court finds that the defendant's motion should be granted.

---

[1] Although Smalls invokes 42 U.S.C. § 1981 in her second cause of action, that statute relates only to race, not sex.

**BACKGROUND**

The following facts are either undisputed or are viewed in the light most favorable to Smalls, to the extent they find support in the record. Smalls, an African-American female, worked for the defendant beginning in 2009 and was promoted to Director of Human Resources in 2016. In or around March of 2017, the defendant began using a nepotism checklist to assist in enforcing its anti-nepotism policy. The checklist required all the defendant's employees to disclose household or close family members working for the Recreation Commission, as well as unrelated employees who resided together or were otherwise engaged in an apparently romantic relationship. When Smalls completed her checklist, she disclosed that her daughter worked for the Recreation Commission, but intentionally failed to disclose that her first cousin also worked there, even though first cousin was a relationship required to be disclosed pursuant to the policy. She testified that she did not include her cousin on the checklist because "he's bad news. . . . My family does not associate with him. We don't deal with him, period, because he's bad news." (Smalls Dep. 46:19-23, ECF No. 22-29 at 10.) In June of 2017, the defendant discovered the plaintiff's omission and informed her that she could either resign or be fired. She chose to be fired so she could apply for unemployment benefits.

According to Smalls, other employees failed to accurately disclose the required relationships and were treated less harshly. For example, a white male was given the opportunity to resign with severance pay. A white female was suspended for five days. Two African-American males are alleged to have failed to disclose their father-son relationship with no penalty. Smalls also contends that a board member did not accurately complete her nepotism checklist. Finally,

Smalls contends that another employee falsely claimed to have a high-school diploma on his employment application, but was not terminated; rather, he was permitted to obtain his GED.[2]

## DISCUSSION

### A.     Summary Judgment Standard

Summary judgment is appropriate only if the moving party "shows that there is no genuine dispute as to any material fact and the [moving party] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A party may support or refute that a material fact is not disputed by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."  Fed. R. Civ. P. 56(c)(1).  "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* [dispute] of *material fact*." Ballinger v. N.C. Agric. Extension Serv., 815 F.2d 1001, 1005 (4th Cir. 1987) (internal quotation marks and citation omitted).  A fact is "material" if proof of its existence or non-existence would affect the disposition of the case under the applicable law.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986).  An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant.  Id. at 257.

In discrimination cases, a party is entitled to summary judgment if no reasonable jury could rule in the non-moving party's favor.  Dennis v. Columbia Colleton Med. Ctr., Inc., 290 F.3d 639, 645 (4th Cir. 2002).  The court cannot make credibility determinations or weigh the evidence, but the court should examine uncontradicted and unimpeached evidence offered by the moving party.

---

[2] Smalls provides no discussion as to how the board chair or the employee who did not have a high-school diploma are similarly situated to Smalls, nor any information from which the court can determine that either of these employees would permit a meaningful comparison.

Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000).  The court must determine whether a party's offered evidence is legally sufficient to support a finding of discrimination and look at the strength of a party's case on its own terms.  See id. at 148 (stating that "[c]ertainly there will be instances where, although the plaintiff has established a prima facie case and set forth sufficient evidence to reject the defendant's explanation, no rational fact-finder could conclude that the action was discriminatory").

**B.     Methods of Proof in Employment Cases**

A plaintiff asserting a claim of unlawful employment discrimination may proceed through two avenues of proof.  First, she may attempt directly to prove discrimination with direct or circumstantial evidence.  Alternatively, when direct proof is lacking, a plaintiff may proceed under the McDonnell Douglas burden-shifting framework.  See Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310, 318 (4th Cir. 2005); see also McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973); Smith v. First Union Nat'l Bank, 202 F.3d 234, 248 (4th Cir. 2000) (holding that the McDonnell Douglas framework applies to retaliation claims under Title VII).  Pursuant to this framework, once the plaintiff establishes a *prima facie* case of discrimination, the burden shifts to the defendant to produce evidence of a legitimate, nondiscriminatory reason for the adverse action. Merritt v. Old Dominion Freight, 601 F.3d 289, 294 (4th Cir. 2010) (Title VII).  The defendant's burden "is a burden of production, not persuasion."  Reeves, 530 U.S. at 142.  Once a defendant meets this burden by producing affidavits or testimony demonstrating a legitimate, nondiscriminatory reason, "the McDonnell Douglas framework—with its presumptions and burdens—disappear[s], and the sole remaining issue [is] discrimination *vel non*."  Id. (internal quotation marks and citations omitted).

In other words, if the defendant meets the burden to demonstrate a legitimate, nondiscriminatory reason, the plaintiff must demonstrate by a preponderance of the evidence that the proffered reason was "not its true reason[], but [was] a pretext for discrimination." Merritt, 601 F.3d at 294 (quoting Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 253 (1981)). Accordingly, the plaintiff's burden of demonstrating pretext "merges with the ultimate burden of persuading the court that [the plaintiff] has been the victim of intentional discrimination." Merritt, 601 F.3d at 294 (quoting Burdine, 450 U.S. at 256) (alterations in original); see also Diamond v. Colonial Life & Accident Ins. Co., 416 F.3d 310, 319 (4th Cir. 2005) (Title VII & 42 U.S.C. § 1981). To meet this "merged" burden, the employee may prove by a preponderance of the evidence that the decision maker's affidavit is untrue or that the employer's proffered explanation is unworthy of credence. Burdine, 450 U.S. at 256.

"[A] plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, *may* permit the trier of fact to conclude that the employer unlawfully discriminated." Reeves, 530 U.S. at 148. However, "if the record conclusively reveal[s] some other, nondiscriminatory reason for the employer's decision, or if the plaintiff create[s] only a weak issue of fact as to whether the employer's reason was untrue and there was abundant and uncontroverted independent evidence that no discrimination had occurred," summary judgment is appropriate. Id. Accordingly, the court must evaluate "the strength of the plaintiff's prima facie case, the probative value of the proof that the employer's explanation is false, and any other evidence that supports the employer's case and that properly may be considered on a motion for judgment as a matter of law." Id. at 148-49. "Notwithstanding the intricacies of proof schemes, the core of every [discrimination] case remains the same,

necessitating resolution of the ultimate question of . . . whether the plaintiff was the victim of intentional discrimination." Merritt, 601 F.3d at 294-95.

**C.     Smalls's Claims Based on Race or Sex Discrimination[3] (First and Second Causes of Action)**

Smalls's discrimination claims fail because on this record, no reasonable jury could conclude that her termination was motivated by either race or sex.  To establish a *prima facie* case in the specific context of a discriminatory discharge claim where disparate discipline is alleged, a plaintiff must show that:  "(1) [s]he was a member of a protected class; (2) [s]he was satisfactorily performing [her] job at the time of the termination; (3) [s]he was terminated from [her] employment; and (4) the prohibited conduct in which [s]he engaged was comparable in seriousness to misconduct of other employees outside the protected class who received less severe discipline." Haynes v. Waste Connections, Inc., 922 F.3d 219, 223 (4th Cir. 2019) (citing Hoyle v. Freightliner, LLC, 650 F.3d 321, 336 (4th Cir. 2011)).  The Fourth Circuit has recently discussed the significance of comparator evidence, clarifying that a plaintiff need not demonstrate that the comparator is identically situated to her for a valid comparison.  Haynes v. Waste Connections, Inc., 922 F.3d 219, 223-25 (4th Cir. 2019).  The Haynes Court stated:

> Turning first to the issue of an appropriate comparator, this Court has emphasized that a comparison between similar employees "will never involve precisely the same set of work-related offenses occurring over the same period of time and under the same sets of circumstances. Cook v. CSX Transp. Corp., 988 F.2d 507, 511 (4th Cir. 1993).  Rather, to establish a valid comparator, the plaintiff must produce evidence that the plaintiff and comparator "dealt with the same supervisor, [were] subject to the same standards and . . . engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." Haywood v. Locke, 387 F. App'x 355,

---

[3] Smalls's civil rights claim under 42 U.S.C. § 1981 rises or falls with her Title VII race claim. See Gairola v. Va. Dep't of Gen. Servs., 753 F.2d 1281, 1285 (4th Cir. 1985) ("Under Title VII and either § 1981 or § 1983, the elements of the required prima facie case are the same."); see also Love-Lane v. Martin, 355 F.3d 766, 786 (4th Cir. 2004) (stating that the McDonnell Douglas burden shifting framework, developed for Title VII, has been applied to § 1981 claims).

>359 (4th Cir. 2010) (quoting <u>Mitchell v. Toledo Hosp.</u>, 964 F.2d 577, 583 (6th Cir. 1992)).

<u>Id.</u> at 223-24 (alterations and omission in original).

Here, Smalls has proffered numerous comparators who she contends also falsified their nepotism checklists but were disciplined less severely, or not at all. However, even assuming these employees committed comparably serious offenses to permit an apt comparison,[4] the plaintiff's list of putative comparators includes other females and other African Americans, undermining any inference that the Recreation Commission was motivated by either race or sex. <u>See</u> Barbara T. Lindemann, Paul Grossman & C. Geoffrey Weirich, <u>Employment Discrimination Law</u> 2-80 (5th ed. 2012) ("Proof that individual employees, both within and outside the protected class, were alternately favored and disfavored, without any observable pattern, also can dispel the inference that some protected characteristic was the basis on which the employer distinguished among them.") (citing <u>Cook v. CSX Transp. Corp.</u>, 988 F.2d 507, 511-12 (4th Cir. 1993) ("On the basis of all the disciplinary records presented, the district court correctly concluded that CSX imposed a range of discipline for Rule 500-type violations within which Cook's discharge fell and that therefore there was no disparity of treatment from which one could conclude that his discipline was a product of racial discrimination.")); <u>Gagne v. SAFE Fed. Credit Union</u>, C/A No. 3:18-208-JMC-PJG, 2020 WL 2476651, at *5 (D.S.C. Jan. 30, 2020) (observing that Plaintiff's "apparent concession that [her employer] actually treated other unidentified but allegedly disabled employees—*i.e.*, employees within her protected class—more favorably than her precludes any

---

[4] The parties devote large portions of their memoranda to the issue of whether the plaintiff and two of her proffered comparators engaged in comparably serious misconduct by intentionally falsifying their checklists. For purposes of resolving the instant motion, the court assumes this disputed fact in plaintiff's favor without the need to determine whether a reasonable jury could agree with her based on the evidence presented.

reasonable inference that Plaintiff's alleged disability (as opposed to poor performance) was the true reason for her termination") (Report and Recommendation), adopted by 2020 WL 1482401 (D.S.C. Mar. 27, 2020).

In any event, as the defendant points out, none of the plaintiff's comparators served in the position of leadership that Smalls held. She was the Human Resources Director, specifically charged with enforcing the defendant's human resources policies, including the nepotism policy. Her intentional falsification of the checklist when charged with this duty is an aggravating circumstance that was reasonably viewed as more egregious, materially distinguishing her from other violators. See Lightner v. City of Wilmington, 545 F.3d 260, 265 (4th Cir. 2008) (finding that the difference in the plaintiff's position as Acting Division Commander of the Professional Standards Division, which made him responsible for ethics rules compliance, and the comparator's position, which was not acting commander or member of the Professional Standards Division, made the purported comparison "too loose"); Haywood, 387 F. App'x at 359 (stating that for a comparator to be valid, the plaintiff must demonstrate that both dealt with the same supervisor and were subject to the same standards).

Thus, Smalls has not introduced evidence of all required elements for a *prima facie* case, nor shown that the defendant's legitimate, nondiscriminatory reason was a pretext for unlawful discrimination. The Recreation Commission is therefore entitled to summary judgment on the discrimination claims.

**D.     State Law Claim (Third Cause of Action)**

Smalls's state law claim for wrongful termination in violation of public policy also fails as a matter of law. See Barron v. Labor Finders of South Carolina, 713 S.E.2d 634, 637 (S.C. 2011)

(holding a claim for wrongful termination in violation of public policy is not available where the employee has an existing statutory remedy).

## ORDER

For all of the foregoing reasons, it is hereby

**ORDERED** that the defendant's motion for summary judgment is granted.

**IT IS SO ORDERED.**

June 5, 2020  
Columbia, South Carolina

Paige J. Gossett  
UNITED STATES MAGISTRATE JUDGE